UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

IGNITE INTERNATIONAL BRANDS, LTD., PAUL BILZERIAN, PAUL DOWDALL, SCOTT ROHLEDER, JOHN SCHAEFER, INTERNATIONAL INVESTMENTS, LTD., ACCELL AUDIT & COMPLIANCE, PA, AND CHRISTOPHER HIESTAND,

Defendants.

Case No.: 1:24-cv-07331-VM

**DEFENDANT IGNITE INTERNATIONAL BRANDS, LTD.'S ANSWER TO COMPLAINT**

Defendant Ignite International Brands, Ltd. ("Ignite"), which only is a Defendant in Count I of the Complaint, by and through its attorneys of record, Dickinson Wright PLLC, for its Answer and Affirmative Defenses to Plaintiff United States Securities and Exchange Commission's ("SEC" or "Commission") Complaint, states as follows:

## PRELIMINARY STATEMENT

This case is not about capital markets integrity, that which appears to matter most to the SEC. This case is not about conflicts of interest, another core SEC program priority. This case purports to be about financial fraud; however, it is a financial fraud concealed and perpetrated at all times by an entity and person not named in this lawsuit. The Complaint tells the veiled and partial story of Higher Connection, the true entity-perpetrator of a fraud on Ignite, all while spinning culpability as against everyone except the proper parties. Every named defendant in this case is a victim of Higher Connection and its two sole owners and managers, against whom Ignite obtained a Summary Judgment Order on December 14, 2023.

Instead of pursuing the true culpable parties, the SEC saw the name "Paul Bilzerian" and simply could not resist its avocation of charging individuals whom the agency perceives to be its nemeses.[1] The story that the SEC neglects to tell is the real story, one that reveals no culpability on the part of Ignite or any of Paul Bilzerian, Paul Dowdall, Scott Rohleder, John Schaefer, or International Investments Ltd. In fact, the SEC does not even bother to tell the entire story, which is necessary to understand what actually transpired.

Paul Bilzerian was an unpaid consultant to Ignite, helping to turn the company from bankruptcy after year-over-year of losses to profitability. A Division of the SEC that typically sees the proverbial "glass as half empty" sees a "corporate raider" in Paul Bilzerian. To the corporate world, Mr. Bilzerian, now in his 70s, is a business visionary and experienced thought-leader. Ignite was confident that it could leverage Mr. Bilzerian's business experience to help the company become successful after several years of mismanagement. First, Mr. Bilzerian was to and did provide structure and discipline to Ignite, meaning he helped Ignite establish consistent meetings run by management and ensured that management reviewed and knew the appropriate information for a leadership team to run a successful company. That included making recommendations for filling the leadership team with quality and qualified personnel. Second, Mr. Bilzerian was to and did provide his perspective and recommendations to the leadership team based on his experience leading companies, that is in addition to his life experience in business. Although Mr. Bilzerian provided guidance and recommendations, he always would leave decisions to the leadership team. Mr. Bilzerian challenged Ignite's leadership team with questions to encourage thoughtful and

---

[1] Over many years, the SEC has had an unhealthy obsession with Mr. Bilzerian. That obsession is not a valid reason to file a Complaint against him or those with whom he associated professionally. Nor, should the SEC have impugned the integrity of his co-defendants in this case simply because they associated with Mr. Bilzerian's friends, relatives and him.

informed processes for decision-making and outside-the-box thinking. Mr. Bilzerian's unique perspective enabled management to view the business from different angles. Mr. Bilzerian was a "true" independent consultant.

The allegations in the Complaint center around Ignites dual structured relationship with Higher Connection. One aspect of the relationship was as a master distributor and the other as a service provider. These two roles are distinct and serve entirely different purposes. A master distributor functions as a large wholesaler. The primary role of the master distributor is to act as an intermediary by purchasing products in bulk and reselling the products to other wholesale distributors and retailers. A master distributor's profit, as with any wholesaler, is a direct result of being offered discounted prices in exchange for its large bulk purchases. The principal difference between a master distributor and a service provider is for everyone within the supply chain to profit; the price offered to the master distributor must be lower than the discounted price offered to other wholesale distributors.

Higher Connection's other relationship with Ignite was strictly as a service provider. Unlike a master distributor, or any other wholesaler, the service provider does *not* purchase any products and, therefore, *does not profit* from the sales it helps fulfills. Instead, the service provider generates revenue by charging its client for storing the client's product at its warehouse, as well as fulfilling orders and shipping those products to the client's customers. In this instance, Higher Connection generated revenue by charging its client, Ignite, for services such as warehousing Ignite's product and shipping those product to Ignite's end customers. This distinction is central to understanding why the transactions referenced in the Complaint were entirely proper and legitimate.

In sum, and lost in the intentional jumble of the Complaint, Higher Connection purchased products from Ignite at discounted prices below what other distributors paid for the same products.

This only made business sense if, as Higher Connection proposed in September 2020, it was acting as Ignite's master distributor. Otherwise, Ignite could have sold directly to the distributors at a higher price and simply used Higher Connection solely as Ignite's service provider – warehouser and shipper – to fulfill its orders. What Ignite would never do and did not do was pay Higher Connection to act as its service provider and give away profit to Higher Connection for acting as a master distributor without ever purchasing any product.

On September 29, 2020, *after* Ignite already had started selling products to Higher Connection, that company's President proposed to Ignite a "master distribution proposal." Higher Connection proposed a master-sub-distribution strategy contingent upon Ignite agreeing to two specific terms – a price of $5.50 per unit of one product and distribution control of the Southwestern territories. Higher Connection also sought Ignite's full support for Higher Connection to function as Ignite's ***master distributor*** of disposable vape products in the Southwestern territories. This background is critical because Higher Connection (1) already was Ignite's customer and had submitted orders at Ignite's regular wholesaler/distributor pricing; (2) not Ignite, proposed Higher Connection becoming the master distributor; and (3) demanded a lower price to act as master distributor, which would not have been warranted if Higher Connection only functioned as a service provider.

Finally, Ignite, a Canadian company, was not a New York corporation, did not have a New York office and did not do business in the Southern District of New York. No alleged action of Ignite occurred in this District. Plaintiff's only threadbare connection to assert venue in this District was that John Schaefer, a defendant solely in the first of five Counts, resided briefly in this District, albeit never at a time of even one substantive allegation in the Complaint. (ECF No. 1 ¶23) Or, in plain English, the SEC's sole basis for asserting venue is that Mr. Schaefer just happened to be

living in New York when the SEC filed the Complaint. No events relevant to the allegations in Count 1, or any of the other four counts of the Complaint, occurred anywhere in the State of New York, let alone in this District. No events relevant to the allegations in the Complaint occurred while Mr. Schaefer lived in New York. Thus, the SEC should not have brought this case in this District because venue is improper under Fed. R. Civ. P. 12(b)(3) and under 15 U.S.C. §78aa. For that matter, the SEC should not have brought this case at all.

Based on the foregoing, and its Answer below, Ignite looks forward to a jury vindicating the company in Count I, the only Count in which Ignite is a Defendant, and all of its Answering co-defendants on all counts in the SEC's Complaint.

**SUMMARY**

1. The allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 1, and on that basis denies the same, except as follows. Ignite admits that at times known to it relevant to the Complaint, Ignite was a Canadian company that sells disposable vape pens and other nicotine e-liquid products. Ignite admits that it issued a press release in January 2021.

2. The allegations in Paragraph 2 pertain, in part, to a party other than Ignite, to which no response is required. Further answering Paragraph 2, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 2, and on that basis denies the same.

3. The allegations in Paragraph 3 pertain, in part, to a party other than Ignite, to which no response is required. Further answering Paragraph 3, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 3, and on that basis denies the same, except as follows. Ignite admits that Company 1 confirmed receivables in writing and International Investments purchased the inventory and paid for it as of December 31, 2020.

4. The allegations in Paragraph 4 pertain, in part, to a party other than Ignite, to which no response is required. Further answering Paragraph 4, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, the allegations are denied.

5. The allegations in Paragraph 5 pertain, in part, to a party other than Ignite, to which no response is required. Further answering Paragraph 5, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite denies that there was any fraud committed by Ignite, Hiestand, Dowdall, Rohleder or anyone else with respect to International Investments transactions and denies that the purchase by International Investments did not occur in December 2020.

6. The allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, the allegations are denied, except as follows. Ignite admits that it

filed its audited financial statements with the Ontario Securities Commission at the end of April 2021.

7. The allegations in Paragraph 7 pertain, in part, to a party other than Ignite, to which no response is required. Further answering Paragraph 7, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 7, and on that basis denies the same, except as follows. Ignite admits that Accell included a clean audit report for Ignite's 2020 financial statements.

**VIOLATIONS**

8. Answering Paragraph 8, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, the allegations are denied.

9. The allegations in Paragraph 9 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 9, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 9, and on that basis denies the same.

10. Answering Paragraph 10, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, the allegations are denied.

11. The allegations in Paragraph 11 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 11, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 11, and on that basis denies the same.

12. Answering Paragraph 12, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, the allegations are denied.

13. The allegations in Paragraph 13 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 13, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 13, and on that basis denies the same.

14. The allegations in Paragraph 14 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 14, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 14, and on that basis denies the same.

15. The allegations in Paragraph 15 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 15, to the extent the allegations describe

statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 15, and on that basis denies the same.

16. The allegations in Paragraph 16 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 16, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent a response is required, the allegation is denied.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

17. The allegations in Paragraph 17 pertain, in part, to a party other than Ignite, to which no response is required. Further answering Paragraph 17, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent an answer is required, Ignite denies the allegations.

18. The allegations in Paragraph 18 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 18, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent a response is required, Ignite denies the allegations and denies that the SEC is entitled to any of the relief that it seeks.

## JURISDICTION AND VENUE

19. The allegations in Paragraph 19 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 19, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent a response is required, Ignite denies the allegations.

20. The allegations in Paragraph 20 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 20, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent a response is required, Ignite denies the allegations.

21. The allegations in Paragraph 21 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 21, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent a response is required, Ignite denies the allegations.

22. The allegations in Paragraph 22 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 22, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent a response is required, Ignite denies the allegations.

23. The allegations in Paragraph 23 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 23, to the extent the allegations describe statutory or constitutional provisions, or are legal conclusions, no response is required. To the extent a response is required, Ignite denies the allegations.

**DEFENDANTS**

24. Answering Paragraph 24, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations sent forth in Paragraph 24, and on that basis denies the same, except as follows. Ignite admits that it is a Canadian company headquartered in Ontario, Canada; shares of Ignite were listed on the Canadian Securities Exchange under the ticker symbol BILZ from about October 2018 to August 2022; Ignite was previously a reporting issuer in the provinces of British Columbia, Alberta, and Ontario, Canada; in May 2019, Ignite caused to

be filed a Form 211 with the Financial Industry Regulatory Authority to be quoted in the United States on OTC Link; Ignite's stock was then quoted on OTC Link under the ticker symbol BILXF from approximately July 2019 to August 31, 2022; and in August 2022, Ignite announced that it had completed a going-private transaction.

25. The allegations in Paragraph 25 pertain to a party other than Ignite, to which no response is required. Further answering Paragraph 25, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 25, and on that basis denies the same.

26. Ignite admits the allegations contained in Paragraph 26 except that Dowdall is not now "the CFO of a financial technology company listed on the Canadian Securities Exchange," and Ignite therefore denies this portion of Paragraph 26. On and as of the date on which the Commission filed the Complaint, Ignite denies that Dowdall was the CFO of any company listed on "the" or "any" Canadian Securities Exchange.

27. Ignite denies each and every allegation in Paragraph 27 except admits that Scott Rohleder is a resident of Morrisville, North Carolina, that Rohleder has held himself out as the CFO of International Investments, the CFO of Ignite or its subsidiaries, and as a managing "Director" of Ignite.

28. Ignite admits the allegations set forth in Paragraph 28, except that it denies that John Schaefer is now a resident of Yorktown Heights, New York and denies that Schaefer was a resident of Yorktown Heights, New York at all times relevant to the allegations in the Complaint. Prior to November 1, 2022, and at all times relevant to the Complaint, Schaefer did not live in

New York. Schaefer physically lived in Yorktown Heights only from November 1, 2022 through December 26, 2024. Ignite admits that Schaefer was president and COO of Ignite from September 2020 to March 2022.

29. The allegations in Paragraph 29 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 29, and on that basis denies the same. Ignite admits that International Investments is a St. Kitts company.

30. The allegations in Paragraph 30 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 30, and on that basis denies the same.

31. The allegations in Paragraph 31 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 31, and on that basis denies the same.

## FACTS

### I. Ignite Denies that Bilzerian Controls or Ever Controlled Ignite.

32. Ignite admits that it is a consumer packaged goods company but denies that it was founded by Bilzerian's son and business partner. Ignite denies that Bilzerian's son has been its CEO and a member of the Board of Directors since its founding.

33. The allegations in Paragraph 33 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge

or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 33, and on that basis denies the same.

34. The allegations in Paragraph 34 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 34, and on that basis denies the same.

35. The allegations in Paragraph 35 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 35, and on that basis denies the same.

36. The allegations in Paragraph 36 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 36, and on that basis denies the same, except as follows. Ignite admits the existence of the email sent on or about August 25, 2020. Ignite denies the characterization of the email.

37. The allegations in Paragraph 37 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 37, and on that basis denies the same, except as follows. Ignite admits the existence of the email sent on or about August 31, 2020. Ignite denies the characterization of the email.

38. The allegations in Paragraph 38 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge

or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 38, and on that basis denies the same.

39. The allegations in Paragraph 39 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 39, and on that basis denies the same, except as follows. Ignite admits the existence of the email sent on or about October 7, 2020. Ignite denies the characterization of the email.

40. The allegations in Paragraph 40 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 40, and on that basis denies the same.

**II. Ignite Admits that it Sent Invoices in Connection with its Fourth Quarter 2020 Revenue and Denies that any Sent Invoices Were Fraudulent or Were Sent to Inflate Ignite's Fourth Quarter 2020 Revenue.**

41. Ignite admits that it began selling products to Higher Connection, a distributor of vaping and nicotine products based in Phoenix, Arizona, in September 2020.

42. The allegations in Paragraph 42 pertain, in part, to a party other than Ignite, to which no response is required. Ignite admits that Higher Connection became Ignite's third-party logistics ("3PL") provider, whereby Higher Connection would store inventory owned by Ignite at Higher Connection's warehouse, and package and ship that inventory on Ignite's behalf when Ignite made a sale of that inventory.

43. The allegations in Paragraph 43 pertain, in part, to a party other than Ignite, to which no response is required. To the extent that a response is required, Ignite admits that Higher

Connection, at certain times relevant to the Complaint, acted, from time-to-time, in relation to Ignite, as Ignite's order fulfillment provider, and as an Ignite customer.

44. The allegations in Paragraph 44 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 44, and on that basis denies the same.

45. The allegations in Paragraph 45 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 45, and on that basis denies the same, except as follows. Ignite admits that when Higher Connection purchased product for Higher Connection's own use, Ignite would generate an invoice.

46. The allegations in Paragraph 46 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 46, and on that basis denies the same, except as follows. Ignite admits Higher Connection only was obligated financially for the product that it ordered from Ignite. The remaining Ignite-branded inventory in Higher Connection's warehouse was the property of Ignite.

47. Answering Paragraph 47, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 47, and on that basis denies the same, except as follows. Ignite admits that on or about November 30, 2020, it sent to Higher Connection invoice number LAIN0000513 for $1,443,750.

48. The allegations in Paragraph 48 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or

information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 48, and on that basis denies the same.

49. The allegations in Paragraph 49 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 49, and on that basis denies the same.

50. Answering Paragraph 50, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 50, and on that basis denies the same, except as follows. Ignite admits that on or about December 14, 2020, it sent to Higher Connection invoice number LAIN000760 for $770,275.00.

51. The allegations in Paragraph 51 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 51, and on that basis denies the same.

52. Answering Paragraph 52, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that in preparation for a weekly meeting with Higher Connection to review, among other things, sales, tracking inventory, and pricing, Higher Connection did not provide the full data required for review. As a result, Ignite admits that the information was then requested from Higher Connection. Ignite further admits that Schaefer wrote the following words in an e-mail to Higher Connection's President, "Can you add a column that shows the amount of units you've been invoiced for by Ignite? I want to ensure he knows what

we have billed you for as its larger than your sales show. Hope that makes sense. Or just do a total that we've billed you for under the total units of inventory so Paul can see that."

53. Answering Paragraph 53, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, and informs the Court that the quotation is incomplete and fails to provide a full and proper context for the quotation.

54. Answering Paragraph 54, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, and informs the Court that the quotation is incomplete and fails to provide a full and proper context for the quotation.

55. Answering Paragraph 55, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that on or about December 28, 2020, an e-mail was sent by Dowdall and received by Schaefer which included the words "checking in to see where we stand with orders" and noting that Ignite was "going to try to move 500,000 units to [Aspire Vape] . . . if [Higher Connection] didn't step up."

56. Answering Paragraph 56, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Dowdall and Schaefer received an email reply that read "We should have an update tomorrow."

57. The allegations in Paragraph 57 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or

information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 57, and on that basis denies the same.

58. Answering Paragraph 58, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that on or about December 29, 2020, Schaefer sent an email and received an automated reply with the out-of-office message that read "I'm currently out of the office and will return back 1/4/2021."

59. Answering Paragraph 59, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Dowdall received an email that was sent on or about December 29, 2020, stating "Higher Connection has stepped up and will place an order for 500k units."

60. The allegations in Paragraph 60 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 60, and on that basis denies the same, except as follows. Ignite admits that on or about December 31, 2020, Ignite sent to Higher Connection invoice number LAIN0001060 for $2,875,000.00.

61. The allegations in Paragraph 61 purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 61, and on that basis denies the same.

62. The allegations in Paragraph 62 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 62, and on that basis denies the same.

63. Answering Paragraph 63, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith.

64. Answering Paragraph 64, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith.

65. Answering Paragraph 65, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Schaefer was on an email conversation on or about January 15, 2021 that included a message to the CEO of Higher Connection that read, in part, "of the $2.2 million that is due from Higher Connection, you made a payment of $50,000."

66. Answering Paragraph 66, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith.

67. Answering Paragraph 67, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith.

68. Answering Paragraph 68, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 68, and on that basis

denies the same, except as follows. Ignite admits that on or about January 17, 2021, the CEO of Higher Connection confirmed that information was correct about the invoices and inventory.

69. Answering Paragraph 69, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith.

70. Answering Paragraph 70, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that the CEO of Higher Connection was asked to confirm that Higher Connection would place weekly orders and make weekly payments "for whatever you order that week" through May 2021, which would be drawn from the inventory listed in December invoices issued to Higher Connection.

71. The allegations in Paragraph 71 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 71, and on that basis denies the same.

**III. Ignite Admits that the Company Announced its Revenue but Denies that Any Announcement was Fraudulent or that any 2020 Revenue was Fraudulent.**

72. The allegations in Paragraph 72 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 72, and on that basis denies the same, except as follows. Ignite admits that it issued a press release on January 19, 2021.

73. Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 73, and on that basis denies the same.

74. Answering Paragraph 74, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that the press release quoted Schaefer as stating, in part, "The substantially improved fourth quarter results reflect the successful efforts of the new management team to reduce costs and increase revenue."

75. Ignite denies that the press release was "false or misleading."

76. Ignite denies the allegations set forth in Paragraph 76.

77. Ignite denies the allegations set forth in Paragraph 77.

78. Ignite denies the allegations set forth in Paragraph 78.

79. Ignite denies the allegations set forth in Paragraph 79.

80. Answering Paragraph 80, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 80, and on the basis denies the same.

81. Answering Paragraph 81, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 81, and on the basis denies the same.

## IV. Ignite Admits that, in 2021, Ignite and International Investments Entered into a Business Transaction but Denies that the Transaction was a Sham Transaction or was for any Fraudulent Purpose Relating to 2020 Revenue for Ignite's Audited Financial Statements.

82. The allegations in Paragraph 82 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 82, and on that basis denies the same, except as follows. Ignite admits that in January 2021, Accell Audit & Compliance, P.A. ("Accell") began an audit of its 2020 financial statements.

83. The allegations in Paragraph 83 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 83, and on that basis denies the same, except as follows. Ignite admits that as part of the audit that Accell performed, Accell sought to confirm Ignite's accounts receivable reported in December 2020 and sent a series of "AR confirmation" letters to Ignite's customers based on data provided by Ignite to Accell, asking customers to verify amounts on invoices "due… December 31, 2020."

84. The allegations in Paragraph 84 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 84, and on that basis denies the same, except as follows. Ignite admits that on or about January 22, 2021, Accell emailed an accounts receivable confirmation letter to the CEO of Higher Connection, which listed eight outstanding invoices, three of which were invoices numbers LAIN0000513, LAIN0000760, and LAIN0001060, totaling about USD $5.1 million.

85. The allegations in Paragraph 85 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 85, and on that basis denies the same, except as follows. Ignite admits that the sum of the other five of the eight invoices referenced in Paragraph 85, for product that Higher Connection had in fact ordered, came to a total amount of just over USD $100,000.

86. The allegations in Paragraph 86 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or

information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 86, and on that basis denies the same.

87. The allegations in Paragraph 87 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 87, and on that basis denies the same.

88. The allegations in Paragraph 88 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 88, and on that basis denies the same.

89. The allegations in Paragraph 89 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 89, and on that basis denies the same. Ignite, to the extent that it may have knowledge of the invoices denies that the invoices were "false."

90. The allegations in Paragraph 90 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 90, and on that basis denies the same.

91. The allegations in Paragraph 91 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 91, and on that basis denies the same.

92. The allegations in Paragraph 92 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 92, and on that basis denies the same, except as follows. Ignite admits that on or about January 28, 2021, an email confirmed that Accell had sent a revised accounts receivable confirmation letter to Higher Connection.

93. The allegations in Paragraph 93 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 93, and on that basis denies the same, except as follows. Ignite admits that an e-mail was sent to the CEO of Higher Connection asking the CEO of Higher Connection to sign the audit confirmation letter and return it to Accell, and to send a "blind copy" of the email to enable confirmation that the audit confirmation letter had been returned.

94. The allegations in Paragraph 94 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 94, and on that basis denies the same.

95. The allegations in Paragraph 95 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 95, and on that basis denies the same, except as follows. Ignite admits that the CEO of Higher Connection and Higher Connection's attorney participated in a phone call on or about January 28, 2021.

96. The allegations in Paragraph 96 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 96, and on that basis denies the same.

97. The allegations in Paragraph 97 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 97, and on that basis denies the same, except as follows. Ignite admits that the CEO of Higher Connection sent a text message.

98. The allegations in Paragraph 98 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 98, and on that basis denies the same, except as follows. Ignite admits that the words in a text message response were "I have already advised Ignite [International Investments] is going to buy every single device you haven't paid for by close of business tomorrow. So make your payment tomorrow because after that you will be dealing with [International Investments]."

99. Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 99, and on that basis denies the same, except as follows. Ignite admits that the same week when the CEO of Higher Connection was negotiating directly with Accell the wording of the accounts receivable confirmation letter sent to Higher Connection, an electronic cigarette distribution company in California placed its first order with Ignite.

100. Answering Paragraph 100, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that on or about January 29, 2021, Schaefer emailed the sales director for the California electronic cigarette distribution company to inform him that Ignite would be shipping "a large quantity of each device/flavor" to that company's warehouse to "store and use for future orders." Ignite also admits that the email to the sales director for the California electronic cigarette distribution company referenced "[o]bviously it will be Ignite product until you issue a [purchase order] and ship the product to your customer."

101. Ignite denies that the invoices were "fraudulent."

102. The allegations in Paragraph 102 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 102, and on that basis denies the same.

103. Answering Paragraph 103, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that on or about February 19, 2021, the sales director for the California electronic cigarette distribution company emailed an Ignite employee, requesting an invoice for products taken from the inventory that Ignite had shipped to the California electronic cigarette distribution company.

104. Answering Paragraph 104, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that on or about March 17, 2021, Schaefer responded to the February 19 email from the sales director for the California electronic cigarette

distribution company and wrote "[a]s discussed previously the inventory in your possession is through International Investments [Ltd.,] so payment will go to them not Ignite International, for this order and all future orders from the current 'non-paid for' inventory sitting at your location."

105. Answering Paragraph 105, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Schaefer attached to the e-mail of March 17, 2021 an invoice issued by International Investments, with an address in St. Kitts. The invoice in turn called for payment to be made to a brokerage account.

106. The allegations in Paragraph 106 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 106, and on that basis denies the same.

107. The allegations in Paragraph 107 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 107, and on that basis denies the same.

108. The allegations in Paragraph 108 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 108, and on that basis denies the same.

109. The allegations in Paragraph 109 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or

information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 109, and on that basis denies the same.

110. The allegations in Paragraph 110 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 110, and on that basis denies the same.

111. The allegations in Paragraph 111 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 111, and on that basis denies the same.

112. Answering Paragraph 112, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Schaefer requested that the California electronic cigarette distribution company copy certain Ignite personnel on all orders of product from that inventory, and that Schaefer personally sent certain invoices to the California electronic cigarette distribution company for payment.

113. Ignite admits the allegations set forth in Paragraph 113.

114. Answering Paragraph 114, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that in February and March 2021 communications with the California electronic cigarette distribution company, Schaefer described the product Ignite had shipped to the California electronic cigarette distribution company as "essentially" "on consignment."

115. Ignite denies the allegations set forth in Paragraph 115.

116. Answering Paragraph 116, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Schaefer requested the California electronic cigarette distribution company fill out paperwork to become an Ignite vendor, so that Ignite could "purchase" the product from the California electronic cigarette distribution company, "as [Ignite] cannot buy directly from International Investments."

117. Answering Paragraph 117, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith.

118. The allegations in Paragraph 118 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 118, and on that basis denies the same. To the extent the allegations regurgitate allegations relating to Ignite's sale of inventory, Ignite denies the allegations.

119. Ignite denies the allegations set forth in Paragraph 119.

120. Answering Paragraph 120, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Dowdall sent an email on or about February 5, 2021 with the phrase "the reconciliation for [Higher Connection] reflecting the process we discussed," and the phrase "make the required changes in the books." Ignite denies any characterization of the words in the email.

121. Ignite denies the allegations set forth in Paragraph 121.

122. Answering Paragraph 122, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith. Ignite denies the remaining allegations set forth in Paragraph 122.

123. The allegations in Paragraph 123 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 123, and on that basis denies the same.

124. The allegations in Paragraph 124 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 124, and on that basis denies the same.

125. The allegations in Paragraph 125 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 125, and on that basis denies the same.

126. The allegations in Paragraph 126 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 126, and on that basis denies the same.

127. The allegations in Paragraph 127 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 127, and on that basis denies the same, except as follows. Ignite admits that on or about February 28,

2021, its vice president of finance sent two emails, acknowledging that Ignite needed to send a new version of Higher Connection's accounts receivable confirmation letter to Accell and that "[t]here was a revision made to this account."

128. Answering Paragraph 128, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 128, and on that basis denies the same, except as follows. Ignite admits that on or about February 28, 2021, Ignite sent Accell a third revised accounts receivable confirmation letter for Higher Connection, reflecting a total balance as of December 31, 2020 of $563,983.55.

129. Answering Paragraph 129, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 129, and on that basis denies the same, except as follows. Ignite admits that the revised third accounts receivable confirmation letter no longer listed December 14 invoice number LAIN0000760 for $770,275.00 or the December 31 invoice number LAIN0001060 for $2,875,000.00; the November 30 invoice number LAIN0000513, for $1,443,750, was largely offset with credits, including a credit for $983,264.12 dated December 31, 2020.

130. The allegations in Paragraph 130 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 130, and on that basis denies the same, except as follows. Ignite admits that Dowdall understood Accell sent an accounts receivable confirmation letter to Higher Connection on or about March 1, 2021 and that Dowdall understood that the confirmation letter was signed and returned.

131. Answering Paragraph 131, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 131, and on that basis

denies the same, except as follows. Ignite admits that it provided Accell with copies of its invoices and credit notes as part of the audit process.

132. Ignite admits the allegations set forth in Paragraph 132.

133. Answering Paragraph 133, Ignite admits that invoice dates could be entered manually.

134. Answering Paragraph 134, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 134, and on that basis denies the same, except as follows. Ignite admits invoice number LAIN0003321 was issued on February 22, 2021, and invoice number LAIN0003325 was issued on February 23, 2021.

135. Answering Paragraph 135, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 135, and on that basis denies the same, except as follows. Ignite admits that invoice numbers LAIN0003322, LAIN0003323, and LAIN0003324 were all issued around February 22-23, 2021.

136. Answering Paragraph 136, Ignite admits that its invoicing software, in early 2021, generated credit note numbers automatically in the order in which they were created.

137. Answering Paragraph 137, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 137, and on that basis denies the same, except as follows. Ignite admits that credit note LAIN0000975 was issued on February 19, 2021, and credit note LAIN0000979 was issued on February 23, 2021.

138. Answering Paragraph 135, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 135, and on that basis denies the same, except as follows. Ignite admits that the credit notes LAIN0000976, LAIN0000977, and LAIN0000978 were all issued around February 19-23, 2021

139. The allegations in Paragraph 139 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 139, and on that basis denies the same, except as follows. Ignite admits that Accell sought an explanation for the change to the Higher Connection invoices and the purported International Investments sale.

140. Answering Paragraph 140, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that on or about April 5, 2021, Dowdall sent an email that included words quoted in Paragraph 140. Ignite denies any characterization of the email as set forth in Paragraph 140.

141. Ignite denies the allegations set forth in Paragraph 141.

142. Ignite denies the allegations set forth in Paragraph 142.

143. The allegations in Paragraph 143 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 143, and on that basis denies the same, except as follows. Ignite admits that Dowdall and Schaefer participated in a telephone call to discuss debt forgiveness.

144. The allegations in Paragraph 144 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 144, and on that basis denies the same.

145. The allegations in Paragraph 145 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 145, and on that basis denies the same, except as follows. Ignite admits that Dowdall participated in a telephone call to discuss the sale to International Investments.

146. Answering Paragraph 146, the allegations purport to repurpose or summarize a document of independent legal significance, and Ignite denies any allegations of this Paragraph inconsistent therewith, except as follows. Ignite admits that Dowdall received an email on or about Aril 6, 2021, that included the words "[W]hen hour [sic] relationship with [Higher Connection] changed, they credited with the $4.6MM sale that was previously booked to them. [International Investments] stepped into the shoes of [Higher Connection] and bought the inventory which it is now selling."

147. Ignite denies the allegations set forth in Paragraph 147.

148. The allegations in Paragraph 148 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 148, and on that basis denies the same.

149. The allegations in Paragraph 149 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 149, and on that basis denies the same.

150. The allegations in Paragraph 150 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or

information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 150, and on that basis denies the same.

151. The allegations in Paragraph 151 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 151, and on that basis denies the same.

152. The allegations in Paragraph 152 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 152, and on that basis denies the same.

153. The allegations in Paragraph 153 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 153, and on that basis denies the same.

154. The allegations in Paragraph 154 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 154, and on that basis denies the same.

155. The allegations in Paragraph 155 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 155, and on that basis denies the same.

156. The allegations in Paragraph 156 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 156, and on that basis denies the same.

157. The allegations in Paragraph 157 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 157, and on that basis denies the same.

158. The allegations in Paragraph 158 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 158, and on that basis denies the same.

159. The allegations in Paragraph 159 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 159, and on that basis denies the same.

160. The allegations in Paragraph 160 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 160, and on that basis denies the same, except as follows. Ignite admits that on or about April 11, 2021, a document, to be included in the audit file that would confirm the International Investments purchase and the fact that the product could not be returned to Ignite, was asked to be created.

161. The allegations in Paragraph 161 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 161, and on that basis denies the same, except as follows. Ignite admits that confirmation was sought that providing such confirmation was something International Investments would do.

162. The allegations in Paragraph 162 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 162, and on that basis denies the same, except as follows. Ignite admits that on or about April 13, 2021, Dowdall drafted the document titled "Acknowledgement of Payment Application" which purported to be "effective December 31, 2020.

163. The allegations in Paragraph 163 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 163, and on that basis denies the same, except as follows. Ignite admits that the only edit Dowdall received to the document that he drafted was to change the signatory for International Investments from Rohleder to Individual 3.

164. The allegations in Paragraph 164 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 164, and on that basis denies the same, except as follows. Ignite admits that Schaefer and Dowdall were copied on an e-mail that included the approved Payment Acknowledgement.

165. The allegations in Paragraph 165 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 165, and on that basis denies the same.

166. The allegations in Paragraph 166 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 166, and on that basis denies the same, except as follows. Ignite admits that Dowdall sent an email containing the unsigned draft with the words in the e-mail about the note reading "FYI, let me know your thoughts on this."

167. The allegations in Paragraph 167 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 167, and on that basis denies the same, except as follows. Ignite admits that Dowdall signed but did not date the Payment Acknowledgement.

168. The allegations in Paragraph 168 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 168, and on that basis denies the same, except as follows. Ignite admits that Dowdall sent debt confirmations in late March 2021.

169. Ignite denies the allegations set forth in Paragraph 169.

170. Answering Paragraph 170, Ignite admits that its audited financial statements for the year ended December 31, 2020 filed with the Ontario Securities Commission.

171. Ignite admits the allegations set forth in Paragraph 171.

172. Ignite admits the allegations set forth in Paragraph 172.

173. The allegations in Paragraph 173 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 173, and on that basis denies the same, except as follows. Ignite admits that a note to Ignite's audited financial statements for the year ended December 31, 2020 titled "Related Party Transactions" includes the language that "International Investments 'made purchases of product from Ignite of [CAD] $5,878,244 [about USD $4.6 million] in 2020.'" Ignite denies that any aspect of the note to the financial statement referenced in Paragraph 173 is "falsely stated" in word, substance or effect.

174. The allegations in Paragraph 174 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 174, and on that basis denies the same, except as follows. Ignite admits that a note to Ignite's audited financial statements for the year ended December 31, 2020 reported that International Investments "was considered a related party by virtue of the appointment of [Individual 3] to its board of directors in July 2020."

175. Ignite denies the allegations set forth in Paragraph 175, except as follows. Ignite admits that a note or notes to Ignite's audited financial statements for the year ended December 31, 2020 disclosed that debt owed to International Investments was reduced.

176. Ignite admits the allegations set forth in Paragraph 176.

177. Ignite denies the allegations set forth in Paragraph 177.

178. Ignite admits that Dowdall was the maker of the Certification of Annual Filings in relation to Ignite's audited financial statements for the year ended December 31, 2020.

179. The allegations in Paragraph 179 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 179, and on that basis denies the same.

180. Answering Paragraph 180, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 180, and on that basis denies the same.

181. Ignite denies the allegations set forth in Paragraph 181.

182. Ignite denies the allegations set forth in Paragraph 182.

183. Ignite denies the allegations set forth in Paragraph 183.

184. Ignite denies the allegations set forth in Paragraph 184.

185. Ignite denies the allegations set forth in Paragraph 185.

186. Ignite denies the allegations set forth in Paragraph 186.

187. Ignite denies the allegations set forth in Paragraph 187.

**VI. Ignite Denies that Accell Issued a False Audit Report for Ignite.**

188. Ignite admits the allegations set forth in Paragraph 188.

189. The allegations in Paragraph 189 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 189, and on that basis denies the same, except as follows. Further answering Paragraph 189, the allegations purport to extract and repeat language from a document of legal significance, and Ignite

denies any allegations of this Paragraph inconsistent therewith. To the extent an answer is required, Ignite admits that the language of the "Independent Auditor's Report" audit report in Ignite's 2020 financial statements includes the language "[i]n our opinion, these consolidated financial statements present fairly, in all material respects, the financial position of the company as at [sic] December 31, 2020." Ignite further admits that the "Independent Auditor's Report" also includes language by which Accell represented that Accell had conducted the audit "in accordance with Canadian generally accepted auditing standards."

190. The allegations in Paragraph 190 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 190, and on that basis denies the same.

191. The allegations in Paragraph 191 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 191, and on that basis denies the same.

192. The allegations in Paragraph 192 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 192, and on that basis denies the same.

193. The allegations in Paragraph 193 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 193, and on that basis denies the same, except as follows. Ignite admits that a reasonable

investor would consider it important that an auditor did not actually hold the opinion that audited financial statements fairly presented the financial position of the audited company for the audit period.

194. The allegations in Paragraph 194 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 194, and on that basis denies the same, except as follows. Ignite admits that a reasonable investor would consider it important that an unqualified audit opinion for a company's financial statements lacked a factual basis for about 35 percent of the company's reported revenue during the reporting period.

195. The allegations in Paragraph 195 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 195, and on that basis denies the same, except as follows. Ignite admits that the sale to International Investments purportedly occurred on the final day of the reporting period.

196. The allegations in Paragraph 196 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 196, and on that basis denies the same.

197. The allegations in Paragraph 197 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 197, and on that basis denies the same.

198. The allegations in Paragraph 198 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 198, and on that basis denies the same.

199. The allegations in Paragraph 199 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 199, and on that basis denies the same.

200. The allegations in Paragraph 200 pertain, in part, to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 200, and on that basis denies the same, except as follows. Ignite admits that a reasonable investor would consider it important to know that an auditor had issued an unqualified audit opinion without conducting the audit in accordance with recognized audit standards.

**FIRST CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(Ignite, Dowdall, Schaefer)**

201. Ignite reasserts its responses to the allegations in the preceding paragraphs as if fully set forth herein.

202. Ignite denies the allegations set forth in Paragraph 202.

203. Ignite denies the allegations set forth in Paragraph 203.

**SECOND CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rules 10b-5(a) and 10b-5(c) Thereunder**
**(Bilzerian, Rohleder, International Investments)**

204. Ignite reasserts its responses to the allegations in the preceding paragraphs as if fully set forth herein.

205. The allegations in Paragraph 205 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 205, and on that basis denies the same.

206. The allegations in Paragraph 206 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 206, and on that basis denies the same.

**THIRD CLAIM FOR RELIEF**
**Violations of Exchange Act Section 10(b) and Rule 10b-5(b) Thereunder**
**(Accell, Hiestand)**

207. Ignite reasserts its responses to the allegations in the preceding paragraphs as if fully set forth herein.

208. The allegations in Paragraph 208 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 208, and on that basis denies the same.

209. The allegations in Paragraph 209 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 209, and on that basis denies the same.

**FOURTH CLAIM FOR RELIEF**
**Aiding and Abetting Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(Bilzerian, Rohleder, International Investments, Accell, Hiestand)**

210. Ignite reasserts its responses to the allegations in the preceding paragraphs as if fully set forth herein.

211. Ignite denies the allegations set forth in Paragraph 211.

212. Ignite denies the allegations set forth in Paragraph 212.

213. The allegations in Paragraph 213 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 213, and on that basis denies the same.

214. The allegations in Paragraph 214 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 214, and on that basis denies the same.

**FIFTH CLAIM FOR RELIEF**
**Control Person Liability Under Section 20(a) of the Exchange Act**
**(Bilzerian)**

215. Ignite reasserts its responses to the allegations in the preceding paragraphs as if fully set forth herein.

216. Ignite denies the allegations set forth in Paragraph 216.

217. Ignite denies the allegations set forth in Paragraph 217.

218. The allegations in Paragraph 218 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 218, and on that basis denies the same.

219. The allegations in Paragraph 219 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 219, and on that basis denies the same.

220. The allegations in Paragraph 220 pertain to a party other than Ignite, to which no response is required. To the extent an answer is required, Ignite is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations set forth in Paragraph 220, and on that basis denies the same.

## DEFENSES AND AFFIRMATIVE DEFENSES

Ignite hereby asserts the following defenses and affirmative defenses. Ignite denies any allegations in the Complaint not specifically admitted above. Ignite reserves the right to amend its Answer to add additional defenses consistent with the facts discovered in this case.

## DEFENSES OF IMPROPER VENUE

Ignite asserts and preserves the defense of improper venue under Fed. R. Civ. P. 12(b)(3).

## AFFIRMATIVE DEFENSE NO. 1

In accordance with Fed. R. Civ. P. 11, all possible defenses may or may not have been asserted herein insofar as sufficient facts were not available to Ignite after reasonable inquiry upon the filing of this pleading, and, therefore, Ignite asserts the following defenses based in fact or upon reasonable belief and hereby reserves the right to amend this answer to allege appropriate and/or additional defenses, if subsequent investigation or discovery so warrants.

## AFFIRMATIVE DEFENSE NO. 2

Ignite hereby incorporates those defenses enumerated in Fed. R. Civ. P. 8(c) as though fully set forth herein. In the event further investigation and discovery reveals the applicability of such defenses, Ignite reserves the right to seek leave of Court to assert such defenses. Such defenses are specifically incorporated herein by reference for the purpose of not waiving any such defense.

**AFFIRMATIVE DEFENSE NO. 3**

The Complaint fails to state claims against Ignite upon which relief can be granted.

**AFFIRMATIVE DEFENSE NO. 4**

This Court lacks personal jurisdiction over Ignite.

**AFFIRMATIVE DEFENSE NO. 5**

Plaintiff's claims are barred by the statute of limitations.

**AFFIRMATIVE DEFENSE NO. 6**

Plaintiff's claims are barred by the statute of repose.

**AFFIRMATIVE DEFENSE NO. 7**

Plaintiff does not have statutory authority to obtain the relief it seeks against Ignite.

**AFFIRMATIVE DEFENSE NO. 8**

Ignite reserves the right to rely upon any defenses that become available or apparent during discovery in this action.

**AFFIRMATIVE DEFENSE NO. 9**

Ignite asserts and hereby incorporates by reference all affirmative defenses made by any of the other Defendants in this action when and where applicable to the circumstances of Ignite as his affirmative defenses.

**AFFIRMATIVE DEFENSE NO. 10**

Plaintiff's claims are barred, in whole or in part, because Ignite was entitled to, and did, rely on the advice of professionals, including attorneys and accountants, in making the decisions, statements, and omissions alleged in the Complaint.

**AFFIRMATIVE DEFENSE NO. 11**

Plaintiff's claims are barred, in whole or in part, because Ignite acted with due diligence and/or did not know, and in the exercise of reasonable care could not have known or had reasonable grounds to believe, that any misstatements or omissions of material fact existed in any of Ignite's filings with the SEC or press releases or any statement in connection therewith or otherwise.

**AFFIRMATIVE DEFENSE NO. 12**

Plaintiff's claims are barred or limited by the absence of loss causation.

**AFFIRMATIVE DEFENSE NO. 13**

Plaintiff's claims are barred or limited by the doctrine of *in pari delicto* or equitable bars to relief.

**AFFIRMATIVE DEFENSE NO. 14**

Plaintiff's claims are barred or limited to the extent any alleged disclosures were forward-looking and accompanied by meaningful cautionary language, and/or corrected.

**AFFIRMATIVE DEFENSE NO. 15**

Plaintiff's allegations of fraud fail to state a claim upon which relief can be granted because they do not satisfy the particularity requirements of Fed. R. Civ. P. 9(b).

**AFFIRMATIVE DEFENSE NO. 16**

Plaintiff's claims are barred, in whole or in part, by the doctrines of impossibility of performance, frustration of purpose, and/or commercial impracticability due to factors including, but not limited to, unforeseen market forces and external economic and other conditions beyond Ignite's control.

**AFFIRMATIVE DEFENSE NO. 17**

Plaintiff does not have statutory authority to obtain the relief it seeks against Ignite.

**AFFIRMATIVE DEFENSE NO. 18**

Ignite reserves the right to rely upon any defenses that become available or apparent during discovery in this action.

**AFFIRMATIVE DEFENSE NO. 19**

Ignite asserts and hereby incorporates by reference all affirmative defenses made by any of the other Defendants in this action when and where applicable to the circumstances of Ignite as its affirmative defenses.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant prays as follows:

1. That Plaintiff take nothing by way of its Complaint, that the same be dismissed with prejudice, and that judgment be entered in favor of Ignite and against Plaintiff.

2. That the Court award Ignite its reasonable attorneys' fees and costs; and

3. For such other and further relief as may be just and proper.

Dated: July 24, 2025

DICKINSON WRIGHT PLLC

s/ David S. Becker
David S. Becker (5649702)
55 West Monroe, Suite1200
Chicago, IL 60603
Tel: 312.377.7881
Fax: 844.670.6009
DBecker@dickinsonwright.com

Jacob S. Frenkel *(Admitted pro hac vice)*
Brooks T. Westergard (*pro hac vice to be filed*)
1825 I St., N.W., Suite 900
Washington, DC 20006
Tel: 202.457.0160 (Switchboard)
Tel: 202.466.5953 (Frenkel)
Tel.: 775.343.7510 (Westergard)
Fax: 844.670.6009

jfrenkel@dickinsonwright.com
bwestergard@dickinsonwright.com

*Attorneys for Defendant Ignite International Brands, Ltd.*

**CERTIFICATE OF SERVICE**

I certify that on July 24, 2025, I electronically filed or caused to be filed the foregoing *Defendant Ignite International Brands, Ltd.'s Answer* with the Clerk of the Court using the CM/ECF system, which will send electronic notice to counsel of record.

s/ David S. Becker
David S. Becker (5649702)
55 West Monroe, Suite1200
Chicago, IL 60603
Tel: 312.377.7881
Fax: 844.670.6009
DBecker@dickinsonwright.com