

Admitted:
New York
New Jersey
Pennsylvania
U.S. Virgin Islands
Dist. Ct. Puerto Rico

**Daniel Cevallos, Esquire**
60 Broad Street, Suite 2900
New York, NY 10004
P: 917.699.5008
www.CevallosWong.com
Danny@CevallosWong.com

September 8, 2025

*Via ECF*
Honorable Victor Marrero
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

  Re: *SEC v. Ignite International Brands, Ltd., et. al*, Case No. 1:24-cv-07331-VM
   Joint Letter per 8/8/2025 Order of Court (ECF # 52)

Dear Judge Marrero:

  This is the parties' Joint Letter to the Court as directed by the Court's 8/8/2025 Order (ECF # 52) (the "Order"). I represent defendants Scott Rohleder and International Investments, Ltd., in the above-referenced civil action. I submit this letter jointly with the plaintiff Securities and Exchange Commission (represented by counsel Charles Canter, Esq.) and the remaining defendants Ignite International Brands, Ltd., Paul Dowdall; and John Schaefer, who are represented by Attorneys Jacob Frenkel and Brooks Westergard; and also defendant Paul Bilzarian, appearing *pro se*.

## THE COURT'S ORDER

  The Order directed the parties to provide "(1) a brief description of the case, including the factual and legal bases for the claim(s) and defense(s); (2) any contemplated motions; (3) the prospect for settlement; and (4) whether the parties consent to proceed for all purposes before the Magistrate Judge designated for this action," as required by the Order.

## 1. BRIEF DESCRIPTION OF THE CASE; FACTUAL & LEGAL BASES FOR THE CLAIMS AND DEFENSES

  The parties provide "a brief description of the case, including the factual and legal bases for the claim(s) and defense(s)."

### *A. Brief Description*

  The SEC's complaint alleges that from late 2020 into 2021, Ignite International Brands, Ltd., under the control of Paul Bilzerian, engaged in a scheme to report approximately $5 million in revenue from non-existent vape pen sales during the fourth quarter of 2020. The complaint alleges that Ignite issued several false invoices for these products in November and December 2020 to one customer who disputed the invoices to Bilzerian and Ignite's then-president John Shaefer. According to the complaint, Ignite touted its 2020 financial performance, including its fourth quarter revenue, in a materially misleading January 2021 press release. The complaint also alleges that in January and February 2021, after the customer refused to confirm the accuracy of the November and December invoices with Ignite's auditors, Ignite transferred the product to



International Investments, Ltd., which the SEC alleges Bilzerian also controls. The complaint further alleges that, despite the purported transfer of the product, Schaefer coordinated the sale of the inventory to other Ignite customers. Finally, the SEC further alleges that Ignite, Bilzerian, former Chief Financial Officer Paul Dowdall, and Scott Rohleder, who purported to be International Investments' Chief Financial Officer provided Accell Audit & Compliance, PA, and its engagement partner, Christopher Hiestand with false information about the transactions during Accell's audit of Ignite's 2020 financial statements. The complaint alleges that in April 2021, Ignite filed false audited financial statements, signed by Dowdall, that included the false revenue and falsely stated that the transaction with International Investments had occurred in 2020.

Defendants dispute the SEC's characterization of these events, deny these allegations, maintain that their accounting and disclosures complied with applicable standards, and intend to vigorously contest the claims.

### B. Legal Bases for Claims

The SEC charges the defendants with violating the antifraud provisions of Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 thereunder. Those provisions prohibit, in connection with the sale of securities, (i) any device, scheme, or artifice to defraud; (ii) any untrue statements or omissions of a material fact; and (iii) any act, practice, or course of business which operates or would operate as a fraud or deceit upon other person. 17 C.F.R. § 240.10b-5. The SEC charges Ignite, Dowdall, and Schaefer with violating each of the provisions of Rule 10b-5 and charges Bilzerian, Rohleder, and International Investments with violating subsections (a) and (c) of Rule 10b-5. In addition, the SEC charges Bilzerian, Rohleder, and International Investments with aiding and abetting Ignite's violation of Rule 10b-5, and charges Bilzerian with liability as a control person of Ignite under Exchange Act Section 20(a). Finally, the SEC charged Accell and Hiestand with violating Rule 10b-5(b) and with aiding and abetting Ignite's violations. The SEC has settled its claims against Accell and Hiestand. The complaint seeks permanent injunctive relief and civil penalties against each defendant, as well as officer and director bars against Bilzerian, Dowdall, Rohleder, and Schafer. Defendants deny all allegations and deny that SEC is entitled to this relief.

### C. Defenses

Defendants deny all the allegations in the Complaint, and may assert the following defenses:

#### (i) NO MATERIAL MISSTATEMENT OR OMISSION

The sales were recognized in accordance with reasonable, good-faith interpretations of applicable accounting standards (e.g., IFRS or GAAP), and any differences reflect legitimate accounting judgment, not fraud. Any discrepancies between invoices and final customer acceptance were immaterial to the company's overall financial position. The January 2021 press release and 2020 financial statements were factually accurate when issued, based on the information available at the time.



### (ii) Absence of Scienter (No Intent to Defraud)

To the extent Section 10(b) and Rule 10b-5 require proof of intent or reckless disregard, defendants acted in good faith and without intent to mislead investors. Disputes with a customer over invoices are common in commercial transactions and were handled as part of normal business operations. Any reassignment of invoices to International Investments reflected a legitimate commercial arrangement, not a scheme to fabricate revenue.

### (iii) Legitimate Business Purpose for the Transactions

International Investments' involvement was a bona fide effort to fulfill contractual obligations, reassign inventory, or manage cash flow — not a sham transaction. The tracking of inventory by Ignite personnel, even after reassignment, was consistent with industry practice when logistics or fulfillment services are provided.

### (iv) No Investor Harm or Loss

Rule 10b-5 cases typically require proof of investor reliance and economic loss (in private actions); while the SEC need not prove reliance, the absence of actual harm supports proportionality arguments and may undercut scienter. The SEC has not identified any specific investor who lost money as a direct result of the alleged conduct.

### (v) SEC Witnesses and Evidence Lack Credibility; Misinterpreted

The complaining customer's disputes over invoices may have been motivated by unrelated business disagreements or post-delivery renegotiations. SEC's characterization of communications (emails, calls) are taken out of context.

### (vi) Mitigation / Proportionality Arguments

Even if there were accounting errors, they could be characterized as isolated missteps, not systemic fraud. The scope of remedies sought — including officer/director bars and large penalties — are disproportionate given the nature and impact of the alleged conduct.

### (vii) Affirmative Defenses

Defendants may also raise the affirmative defenses pleaded in their Answers.

## 2. CONTEMPLATED MOTIONS: SUMMARY JUDGMENT

The parties are not yet certain what motions may be filed, and will have a better idea once discovery proceeds. Both the plaintiff and defendants expect to file motions for summary judgment once discovery is complete.



**3. PROSPECT FOR SETTLEMENT**

The parties have discussed settlement, but at this early stage the prospects for settlement are slim and the parties plan to proceed to a decision on the merits.

**4. CONSENT TO PROCEED BEFORE MAGISTRATE JUDGE**

It appears from the docket that no Magistrate Judge is currently assigned to this case. At this time the parties do not consent to proceed for all purposes before a Magistrate Judge.

**5. CASE MANAGEMENT PLAN; DISCOVERY TO BE "COMPLETED WITHIN FOUR MONTHS"**

The Court also directed the parties "to submit a completed Case Management Plan that provides that discovery is to be completed within four months unless otherwise permitted by the Court." ECF # 52. At the Rule 26(f) conference, the parties agreed to complete fact discovery within four months of the initial disclosures, which the parties tentatively agreed would be served on or before August 29, 2025. The SEC served its initial disclosures on August 29, 2025, and has made available to defendants all documents in its possession it may use to support its claims. Following the Rule 26(f) conference, however, the United States moved to intervene and stay the case pending completion of criminal proceedings against some of the defendants in the Central District of California. As a result, defendants require additional time, to September 26, 2025, to prepare and serve their initial disclosures. Also, because of the scale of the SEC's production (exceeding 500GB), the number of the individuals listed on the SEC's initial disclosures (more than two dozen), and the criminal trial, which is set for November 3, 2025, and thus, in the middle of the discovery period, completion of fact discovery within four months is no longer feasible. The parties' jointly-agreed-upon Case Management Plan is attached hereto.

By: _____
Daniel L. Cevallos, Esq.
Counsel for Scott Rohleder

**Affirmation of Service**

The undersigned hereby affirms that on the below date, he e-filed the foregoing via ECF, which will send a notice of electronic filing ("NEF") to all counsel/parties of record who have appeared or registered for ECF / PACER, and by e-mail to pro se parties who have not yet been able to obtain SDNY ECF access.

Dated: September 8, 2025

By: _____
Daniel L. Cevallos, Esq.