**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,   :
                                            :

                      Plaintiff,   :                 24-CV-7331 (VM) (OTW)

                      -against-   :

                                            :          **OPINION & ORDER**

IGNITE INTERNATIONAL BRANDS, LTD. et al.,   :

                      Defendants.   :

                                            :
-------------------------------------------------------------x

         **ONA T. WANG**, **United States Magistrate Judge**:

The United States Department of Justice, ("DOJ") through the United States Attorney's

Office for the Southern District of New York, has moved to intervene and stay this case during

the pendency of a related criminal case in the Central District of California[1] in which three of

the six Defendants in this action are criminally charged, in part, for the same conduct alleged

here. For the reasons that follow, the DOJ's motion to intervene and to stay is **GRANTED.**

**I.**         **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

The Court assumes familiarity with the factual and procedural history of this Case. As

relevant here, in September 2024, the Security and Exchange Commission ("SEC") brought this

action seeking injunctive relief as well as civil monetary penalties against Defendants Ignite

International Brands, Ltd. ("Ignite"), Paul Bilzerian ("Bilzerian"), Paul Dowdall ("Dowdall"), Scott

Rohleder ("Rohleder"), John Schaefer ("Schaefer"), and International Investments, Ltd.

---

[1] The United States Attorney for the Southern District of New York is acting on behalf of the United States Attorney
for the Central District of California.

("International Investments") for allegedly misleading investors about the date of a "sale" of vape products, which was also not at arm's length. (Compl., ECF 6).

The SEC alleges that Bilzerian, who controls both Ignite and International Investments, orchestrated a scheme in which Dowdall and Rohleder, the Chief Financial Officers of Ignite and International Investments, respectively, created fraudulent invoices in order to mislead Ignite's auditors into believing that Ignite had sold a substantial volume of vape products it had not, and backdated those invoices so that Ignite could report higher than expected earnings at the end of 2020. The SEC alleges that Ignite actually "sold" the vape products to International Investments in 2021.  The SEC also alleges that the Defendants misled investors about Bilzerian's involvement in both Ignite and International Investments. Because International Investments could not lawfully sell vape products "purchased" from Ignite to one of Ignite's customers without breaching Bilzerian's duty of loyalty to Ignite, the SEC alleges that a third-party intermediary, Defendant Schaefer, directed payment for the vape products from the eventual buyer to another entity controlled by Rohleder, rather than to International Investments. (*Id*.)

In June 2024, a grand jury sitting in the Central District of California returned an indictment in *United States v. Paul Bilzerian, et al.,* No. 24-CR-00569 (C.D. Ca.) (the "Related Criminal Case") which charged Bilzerian, Rohleder and Ignite with, *inter alia*, fraud arising out of the same conduct charged by the SEC here. (*See* Indictment, ECF 80-1). Schaefer, Dowdall and International Investments, the remaining Defendants, have not been named in the Indictment. (*Id*.)

On September 22, 2025, the DOJ moved to intervene, seeking a stay of all proceedings until the conclusion of the Related Criminal Case. (*See* ECF Nos. 79-81). Of the common defendants to the criminal and civil proceedings, Ignite and Rohleder do not oppose a a stay, (ECF 102) while Bilzerian opposes a stay. (ECF 105). The remaining Defendants who are not facing criminal charges—International Investments, Dowdall, and Schaefer— also oppose the motion. (ECF 97; ECF 90). The SEC has not taken a position on the motion. (ECF 74).

In October 2025, I stayed this case until the end of the lapse in appropriations, which ended on November 9, 2025. (ECF 88). After meeting and conferring, the parties informed the Court that the DOJ still wished to intervene and stay the case, that the SEC continued to take no position for or against a stay, and that Defendants Bilzerian, International Investments, Dowdall, and Schaefer continued to oppose the DOJ's application. (ECF 97).

On March 13, 2026, International Investments noticed the deposition of non-party Zach Gleason. (ECF 102). On March 16, 2026, the Government informed the Court that Mr. Gleason was likely to be called as a witness in the Related Criminal Case. (*Id*.) Accordingly, I issued a temporary stay of deposition discovery pending my decision on this motion. (ECF 103).

## II.    DISCUSSION

### A.    <u>The DOJ May Intervene As of Right</u>

A non-party may intervene as of right in an action when the movant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant is so situated that "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . ." Fed. R. Civ. P. 24(a).

3

Here, the SEC and DOJ are separate and independent agencies; the SEC does not adequately represent the DOJ's interests in this civil case. *See Sec. & Exch. Comm'n v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) ("[t]he government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter"). Bilzerian opposes the DOJ's motion but does not articulate the reason for his objection. (ECF 105). Defendants Dowdall, Schaefer, and International Investments' argument that "the [DOJ] decided to strategically wait until the defendants answered the SEC Complaint and made certain admissions on the record before the [DOJ] decided to move to intervene," is conclusory. (ECF 84). Accordingly, the DOJ may intervene as of right because it "claims an interest relating to the property or transaction that is the subject of the action" and is "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2).

Because the DOJ is entitled to intervene as of right, the Court need not reach the question of permissive intervention under Fed. R. Civ. P. 24(b). However, the Court notes that, even if the DOJ were not entitled to intervene as of right, it is still within the Court's discretion to permit the DOJ to intervene here.

**B.      The Related Criminal Matter Warrants a Stay of this Civil Case**

In addition to intervention, the DOJ seeks a stay of all proceedings during the pendency of the Related Criminal Case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quotation and citations omitted). "While staying a civil case

is an extraordinary remedy, courts will not hesitate to grant a stay when the interests of justice seem to require it." *Sec. & Exch. Comm'n v. LaGuardia,* No. 19-CV-5895 (ALC) (SDA), 2020 WL 476439, at *2 (S.D.N.Y. Jan. 23, 2020). When making a stay determination, courts must "balance the competing interests at stake... to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *Id*. (quotations omitted). Accordingly, to make a stay determination, I have balanced six factors used as a guideline by courts in this district[2] and find that a stay is justified.

>    i.    *Degree of factual overlap*

The first factor—a significant degree of factual overlap between this civil case and the Related Criminal Case—militates in favor of granting a stay. "Courts have consistently recognized [factual overlap] as a particularly significant factor." *Sec. & Exch. Comm'n v. Shkreli*, No. 15-CV-7175 (KAM) (RML), 2016 WL 1122029, at *4 (E.D.N.Y. Mar. 22, 2016). Factual overlap is particularly significant when the factual overlap is between a criminal case and a civil case. *See e.g., Sec. & Exch. Comm'n v. Carroll*, No. 19-CV-7199 (AT), 2020 WL 1272287, at *4 (S.D.N.Y. Mar. 17, 2020) ("[t]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter") (quoting *Volmar Distribs. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).

Here, the SEC's allegations overlap with those in the Indictment, which charges in Count Two that Bilzerian, Rohleder, and Ignite conspired to commit fraud by means of the "sale" of

---

[2] The six factors are: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interest of the court; and (6) the public interest. *See, e.g., Sec. & Exch. Comm'n v. Treadway*, No. 04-CV-3464 (VM) (JCF), 2005 WL 713826, at *2 (S.D.N.Y. Mar. 30, 2005).

5

vape products from Ignite to International Investments. (*See* Indictment, ECF 80-1 at 11). As discussed in more detail *infra*, this factual overlap creates a substantial risk that the criminally charged Defendants' discovery obligations in this civil case would force them to choose between their Fifth Amendment protection in the Related Criminal Case or their due process rights in this civil case.

Defendant Bilzerian does not address this factor. Defendants Dowdall, Schaefer, and International Investments argue that, because the charges in the Related Criminal Case "span[] far more years" than the allegations in the SEC's Complaint, there is insufficient overlap between the two to justify a stay. (ECF 84 at 29; ECF 85 at 5) However, it is not relevant if criminal charges are broader than the civil charges so long as there is overlap between the two. *See Sec. & Exch. Comm'n v. Abraaj Inv. Mgmt. Ltd.*, No. 19-CV-3244 (AJN), 2019 WL 6498282, at *2 (S.D.N.Y. Dec. 3, 2019) (staying case where "allegations in the criminal case "completely subsume those in the civil case," and noting that it "does not matter" that "the indictment also includes many other allegations of criminal conduct"). Accordingly, this factor favors a stay.

ii.    *Status of the parallel criminal case*

Likewise, the second factor—the status of the parallel criminal proceeding—supports a stay, because three Defendants in this Case -- Ignite, Rohleder, and Bilzerian -- are indicted defendants in the Related Criminal Case, which is actively proceeding to trial in the Central District of California. (*See* ECF 80 at 3-4; ECF 111).

Here, only Defendant Bilzerian addresses this factor: he argues that the criminal case is not proceeding, but that claim is conclusory and contradicted by the DOJ's most recent status letter. (ECF 105; *see* ECF 111). Accordingly, this factor favors a stay. *See e.g., Carroll*, 2020 WL

1272287, at *4 (finding criminal indictment favors stay in related civil case because "[t]here is no reason to believe that the criminal case will not move expeditiously").

### iii.    *Burden to the Plaintiff*

The third factor—burden to the SEC—is neutral because the SEC takes no position on the DOJ's motion. *See Treadway*, 2005 WL 713826, at *3 (stating that where the SEC does not take a position on a government motion for a stay, it "has not articulated an interest that requires consideration"). Bilzerian, Dowdall, and Schaefer do not address this factor. International Investments does not explain its argument that "even though the SEC says it takes no position, the SEC is actually engaging in ongoing discovery" or why that is relevant to this factor. (ECF 84 at 29). Accordingly, this factor favors a stay.

### iv.    *Burden to the Defendants*

Turning to the fourth factor—burden to the Defendants—Courts in this district have recognized that "a[n uncharged] defendant [in a civil case] has an interest in "clear[ing] his name ... in a timely manner—not just when it is most convenient for the government." *See Sec. & Exch. Comm'n v. Blaszczak*, No. 17-CV-3919 (AJN), 2018 WL 301091, at *2 (S.D.N.Y. Jan. 3, 2018) (collecting cases); *see also Treadway,* 2005 WL 713826, at *3 ("[t]he defendants ... plainly have an important interest in moving to trial swiftly in this case, since the pendency of this litigation is an economic burden on them....")

Here, Dowdall and Schaefer argue that the pendency of the civil action "will only prolong the difficulties that [Dowdall and Schaefer] are experiencing with successfully pursuing new employment, re-establishing banking relationships, and restoring their professional reputations." (ECF 97). They also allege that the SEC has closed their bank accounts and that

7

they have lost access to the funds therein. (ECF 60). However, even if the pendency of this Case imposes an economic burden on Dowdall and Schaefer, they have not explained how or whether that burden should be weighed against the other factors set forth in *Treadway*. Nor have they explained how their alleged burdens outweigh the other factors favoring a stay, how their burdens outweigh burdens on other parties if a stay were denied, or even how conducting discovery in this civil proceeding will resolve the personal and professional burdens they are currently facing.

Dowdall and Schaefer also have not proposed any means for resolving the civil action as to them (other than moving to sever), or in proceeding with any discovery that does not involve witnesses or evidence that overlap with the criminal proceeding. *See Sec. & Exch. Comm'n v. Archer*, No. 16-CV-3505 (WHP), 2016 WL 4371303, at *2 (S.D.N.Y. Aug. 10, 2016) (a defendant's ability to defend themselves is not "foreclosed in its entirety" simply because they "cannot obtain the statements of certain witnesses whom the United States Attorney may call at the criminal trial").

International Investments also argues that a stay would burden it, but its argument lacks any support beyond a single conclusory statement of a burden without addressing the weight that the Court should assign to that alleged burden. (ECF 84 at 30). Bilzerian does not argue any specific burden on him beyond his desire to "bring an end to this civil case." (ECF 105). Oddly, he does not address whether resolving the civil case might implicate his own Fifth Amendment rights.

Finally, the Court must also consider the burden on the criminally charged Defendants—Rohleder, Ignite, and even Bilzerian—if discovery were to proceed. Since the allegedly

fraudulent transaction alleged in this case is also charged in the Related Criminal Case, allowing discovery to proceed now would likely place the criminally charged Defendants in the untenable position of choosing between waiving their Fifth Amendment rights in the Related Criminal Case or conceding liability here if they were to assert such rights. *See e.g., Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (a defendant in a civil case who is indicted in a parallel criminal case must either waive their Fifth Amendment privilege by participating in civil discovery, which can be used against them in their criminal trial, or risk an adverse inference in their civil case by refusing to participate in discovery) (collecting cases). After weighing the burdens on all Defendants, I find that this factor favors a stay.

       *v.     The Court's interest*

The fifth factor—the Court's interest – weighs in favor of a stay. "In evaluating their own interests, courts often look to the convenience of the court in the management of its cases as well as the efficient use of judicial resources." *Shkreli*, 2016 WL 1122029, at *6 (quotations omitted) (collecting cases). Here, allowing discovery to proceed would result in duplicative discovery and a waste of judicial and party resources because findings in the Related Criminal Case will likely substantially narrow the discovery needed to resolve this case. *See e.g., Shkreli*, 2016 WL 1122029, at *6 ("a stay of the civil action while the criminal case moves forward would avoid a duplication of efforts and a waste of judicial time and resources") (quotations omitted).

Dowdall and Schaefer argue that it would be "impossible" for the Related Criminal Case to narrow the scope of discovery here because "the one count [in the SEC's Complaint] in which the Non-Criminal Case Defendants are defendants does not overlap at all with the California

9

case." [sic] (ECF 85 at 5). That argument is inapposite because, as I discussed at length previously, there *is* substantial overlap with the Related Criminal Case. (*See supra* at III.(B)(i)). International Investments takes a similar position, arguing that the Court's interest should be in completing discovery, not in avoiding duplication of effort. (ECF 84 at 30). Their argument is also not persuasive. Accordingly, this factor favors a stay.

>    vi.    *Public interest*

The final factor—the public's interest—strongly favors a stay. "The public has an 'overriding interest in the integrity of criminal proceedings,' which includes ensuring 'the integrity and security of [Government] witnesses.'" *Blaszczak*, 2018 WL 301091, at *3 (quoting *Archer*, 2016 WL 4371303, at *2). A stay would also "prevent circumvention of the limitations on discovery in ... criminal proceedings." *Id.* (quoting *Treadway,* 2005 WL 713826, at *4).

While the public has a strong interest in expeditiously resolving this Case because it seeks to protect investors from fraud, the public's interest in the integrity of the criminal case is more important. *See e.g.*, *Shkreli*, 2016 WL 1122029, at *7 ("it can be difficult to discern whether the public has a stronger interest in the criminal or the civil litigation[, u]ltimately...the public's interest in the effective enforcement of the criminal law is the paramount public concern") (cleaned up).

Accordingly, this factor favors a stay.[3]

## III.    CONCLUSION

---

[3] Dowdall and Schaefer argue — inexplicably — that "[m]otions to stay that are brought by the plaintiff (or by an entity aligned with the plaintiff as in this case) are especially disfavored." (ECF 85 at 6). Putting aside that the movant, the DOJ, is an Intervenor and the Plaintiff, the SEC, is not aligned with the DOJ, Dowdall and Schaefer rely primarily on citations to fifty-year-old, out-of-circuit-caselaw, which is neither binding on this Court nor persuasive. The Court is also not persuaded by International Investments' only argument, which is conclusory and not useful. (ECF 84 at 30).

Because it is entitled to intervene as of right, the DOJ's motion to intervene is **GRANTED**. After considering the balance of the foregoing six factors, I find that a stay of all proceedings is justified and the DOJ's motion to stay is **GRANTED.** The temporary stay of deposition discovery (ECF 103) is lifted, and all discovery is **STAYED** *sine die* pending a status conference with the parties to discuss whether any limited discovery may proceed, and whether Dowdall, Schaefer, and International Investments would still consider moving for severance to proceed separately in their civil case.

The parties are directed to file a joint status letter by April 22, 2026, which:

- proposes three dates in May or June for a status conference;
- summarizes the discovery done to date (if any);
- summarizes what discovery, if any, the parties agree may proceed, consistent with this Order; and
- whether Dowdall and Schaefer and International Investments wish to move for severance.

This joint status letter is not a motion to compel and must comply with my Individual Practices. It should contain minimal argument and stick to joint, plain statements of fact. The Court will discuss the parties' areas of disagreement, if any, at the status conference.

Finally, it has come to the Court's attention that self-represented Defendant Bilzerian may have been arrested on or about March 24, 2026. (*See* ECF 111). The DOJ is directed to determine if Mr. Bilzerian remains in custody either of the United States or of the authorities in Saint Kitts and Nevis, and then to coordinate with those authorities if necessary to serve a copy of this Order on Mr. Bilzerian as soon as practicable. The DOJ shall file proof of such service on the docket no later than **April 22, 2026**.

**SO ORDERED.**

11

12

Dated: April 16, 2026
    New York, New York

/s/  Ona T. Wang
**Ona T. Wang**
United States Magistrate Judge