**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>Plaintiff,<br>-against-<br>IGNITE INTERNATIONAL BRANDS, LTD. et al.,<br>Defendants. | 24-CV-7331 (VM) (OTW)<br>**<u>OPINION & ORDER</u>** |

**ONA T. WANG**, **United States Magistrate Judge**:

Before the Court is a motion by three of the six Defendants in this case, Paul Dowdall ("Dowdall"), John Schaefer ("Schaefer") and International Investments, Ltd. ("International Investments") (collectively, the "Moving Defendants"), who seek severance from the remaining Defendants, Paul Bilzerian ("Bilzerian"), Scott Rohleder ("Rohleder"), and Ignite International Brands ("Ignite") (collectively the "Criminally Charged Defendants"). This matter is currently stayed during the pendency of the criminal case against the Criminally Charged Defendants.[1] (the "Related Criminal Matter"). (*See* ECF 118). Plaintiff, the Securities and Exchange Commission ("SEC"), opposes severance. (ECF 125). Intervenor, the Department of Justice, and the Criminally Charged Defendants have not taken a position on severance. For the reasons that follow, the motion to sever is **DENIED.**

---

[1] *See United States v. Paul Bilzerian, et al.*, No. 24-CR-00569 (MCS) (C.D.C.A).

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As relevant here, Plaintiff alleges that Bilzerian orchestrated a scheme to mislead Ignite's auditors into believing that Ignite had sold a substantial volume of vape products it had not. (*See* Compl., ECF 1). To carry out this scheme, Dowdall, the Chief Financial Officer of Ignite, worked with Rohleder to create fraudulent invoices related to the sale of those vape products to one of Ignite's customers, Higher Connection LLC. (*Id*. at ¶¶ 47-62). Higher Connection LLC disputed the fraudulent invoices numerous times and refused to pay them. (*Id*. at ¶¶ 63-69). Regardless, Ignite issued a press release quoting Schaefer that Ignite had "substantially improved" financial results in its fourth quarter of 2020. (*Id*. at ¶¶ 72-81).

During a subsequent audit of Ignite, Higher Connection LLC refused to confirm the disputed invoices. (*Id*. ¶¶ 82-98). In order to reconcile Ignite's books, Dowdall allegedly issued new, backdated invoices to International Investments, a company also owned by Bilzerian. (*Id*. ¶¶ 119-122). In furtherance of this portion of the scheme, the SEC alleges that Schaefer, acting as a third-party intermediary, directed payment from the buyer to another entity controlled by Rohleder, rather than to International Investments. (*Id*. at ¶¶ 100-117). Finally, Rohleder allegedly lied to Ignite's auditors by holding himself out as International Investments's CFO and falsely suggesting that the "sale" to International Investments was made in 2020. (*Id*. ¶¶ 143-146).

On September 26, 2024, a grand jury sitting in the Central District of California returned an indictment in the Related Criminal Matter charging the Criminally Charged Defendants with, *inter alia*, fraud arising out of the same conduct at issue in this case. (*See* Indictment, ECF 80-1). The Moving Defendants have not been named or charged in the Indictment. (*Id*.)

One day later, the SEC brought this case on September 27, 2024, alleging that Defendants violated Section 10(b) of the Exchange Act and various sections of Rule 10b-5 thereunder and that Defendant Bilzerian was subject to control person liability under Section 20(a) of the Exchange Act. *(Id*. ¶¶ 201-220). The SEC further alleges that the Criminally Charged Defendants also made material false statements in connection with the purchase or sale of securities and that the Moving Defendants aided and abetted them in doing so. (*Id*.)

On September 22, 2025, the U.S Attorney's Office moved to intervene in this case, seeking a stay of all proceedings until the conclusion of the Related Criminal Matter. (*See* ECF Nos. 79-81). After consideration of the arguments for and against both intervention and a stay during the pendency of the Related Criminal Matter, I granted both. (ECF 118). In that Order, I invited the Moving Defendants to seek severance, if they desired to do so.[2] The Moving Defendants subsequently filed the instant motion on May 15, 2026. (ECF 123). On May 29, 2026, Plaintiff filed its opposition. (ECF 125). On June 5, 2026, the Moving Defendants filed a Reply. (ECF 126). Neither the U.S. Attorney's Office nor the Criminally Charged Defendants have submitted papers in support or opposition, nor have they requested any extension of the deadline to do so. *See* Docket.

[2] In their letters of opposition to U.S Attorney's Office's motion to stay, the Moving Defendants represented that they opposed the stay because they believed that they "should be entitled to present their defenses in this matter expeditiously" (ECF 97). In light of the Moving Defendants' urgency, Judge Wang, in her April 16, 2026, Opinion & Order, noted that the Moving Defendants had "not proposed any means for resolving the civil action as to them (other than moving to sever)" before directing the Moving Defendants to consider whether to move for severance. (ECF 118 at 8, 11).

## II. LEGAL STANDARD

Fed. R. Civ. P. 21 permits in relevant part that "[a]ny claim against a party may be severed and proceeded with separately." Fed. R. Civ. P. 21. The trial court has broad discretion in deciding whether to sever claims. *New York v. Hendrickson Bros., Inc.,* 840 F.2d 1065, 1082 (2d Cir.1988). In deciding whether to grant severance, other Courts have frequently considered the following factors:

(1) whether the claims arise out of the same transaction or occurrence;
(2) whether the claims present some common questions of law or fact;
(3) whether settlement of the claims or judicial economy would be facilitated;
(4) whether prejudice would be avoided if severance were granted; and
(5) whether different witnesses and documentary proof are required for the separate claims.

*see e.g.*, *Rudersdal v. Harris*, 18-CV-11072 (GHW) (RWL), 2021 WL 2209042, at *22 (S.D.N.Y. Feb. 27, 2021) (collecting cases demonstrating use of five factors to determine whether to grant severance), *R. & R. adopted as modified*, 2022 WL 263568 (S.D.N.Y. Jan. 28, 2022).

"Severance is a procedural device to be employed only in exceptional circumstances." *Wave Studio, LLC v. General Hotel Management Ltd.*, No. 13-CV-9239 (CS), 2017 WL 972117, at *10 (S.D.N.Y. Mar. 10, 2017) (quotation omitted). Accordingly, courts "have generally only granted severance where more than one condition" militates in favor of it. *Laser Kitten, LLC v. Marc Jacobs International, LLC*, No. 17-CV-8613 (JFK), 2019 WL 1147599, at *1 (S.D.N.Y. Mar. 13, 2019).

## III. DISCUSSION

I have considered the Moving Defendants' arguments I find that none of the *Rudersdal* factors militate in favor of severance.

Plaintiff's claims arise from a single transaction or occurrence and present common questions of law and fact: the scheme to fraudulently report Ignite's fourth quarter 2020 revenue and each Defendant's role in the scheme. The only distinction is that one set of Defendants has been criminally charged while the other has not. The actions of each individual Defendant in furtherance of the overall scheme are, therefore, "logically related," and arise from a common question of law and fact. Thus, the first two factors in *Rudersdal* do not support severance. *See S.E.C. v. Lybrand*, No. 00-CV-1387 (SHS), 2000 WL 913894, at *8 (S.D.N.Y. July 6, 2000) (severance inappropriate where criminal complaint charged movants with aiding and abetting wrongdoing of non-movant in addition to own wrongdoing.)

The remaining *Rudersdal* factors also do not support severance. Defendants do not identify a legal prejudice they seek to avoid through severance, nor can the Court discern one. *See e.g.*, *See, e.g.*, *Wave Studio, LLC*, 2017 WL 972117, at *10 (severing claims against one defendant to dismiss that claim for *forum non conveniens*); *Rudersdal*, 2021 WL 2209042, at *27 (finding severance was appropriate to avoid prejudice).

Severance is also judicially inefficient. Since the claims against all Defendants arise from a common question of law and fact, Plaintiff would be required to try this case twice, utilizing the same witnesses and the same documentary evidence in the same district. See *Hendrickson Bros.,* 840 F.2d at 1082. This would not only waste Plaintiff's time and resources, but also the resources of the Court, which would have to oversee not only a duplicate trial but duplicate discovery and duplicate pre-trial and dispositive motions. *See Kos Pharms., Inc. v. Barr Lab'ys, Inc.*, 218 F.R.D. 387, 390–391 (S.D.N.Y. 2003) ("[e]xtending the adjudication into two or more proceedings necessarily implicates additional discovery; more pretrial disputes and motion

practice; empaneling another jury or imposing more on the jurors who decide the earlier phase of the litigation; deposing or recalling some of the same witnesses; and potentially engendering new rounds of trial and post-trial motions and appeals."); *See also Hedgeye Risk Mgmt., LLC v. Dale*, 343 F.R.D. 367, 371 (S.D.N.Y. 2023) (denying severance because, *inter alia*, two actions would cost more money, more greatly inconvenience the parties and witnesses, and require the parties and the Court to expend more time managing two cases).

The Moving Defendants cite *S.E.C. v. Pignatiello*, No. 97-CV-9303 (SWK), 1998 WL 293988 (S.D.N.Y. June 5, 1998) as an example of a civil case brought by the SEC in parallel with a criminal case where the Court found severance of the criminally charged and non-criminally charged Defendants was appropriate. However, their reliance is misplaced because the facts justifying severance in *Pignatiello* are easily distinguishable, if not entirely opposite, from this case. *See Pignatiello*, 1998 WL 293988, at *3 ("[e]ach scheme involved different co-defendants, different common stock, a different contract and a different method of compensating Pignatiello. Similarly, each scheme began...and ended at different times"); *see also Lybrand*, 2000 WL 913894, at *8 (distinguishing *Pignatiello* from case involving "single, integrated scheme of wrongdoing").

## V. CONCLUSION

For the foregoing reasons, I find that Plaintiff's claims against the Moving Defendants are factually and legally intertwined with the claims against the Criminally Charged Defendants because the claims against each Defendant share common questions of law and fact around the same scheme to defraud investors by falsifying Ignite's fourth quarter 2020 revenue. Moreover, severance of the Moving Defendants would lead to judicially inefficient duplicative discovery

and duplicative trials which is not justified, in part, because the Moving Defendants have not shown that severance would avoid a substantial prejudice against them. Therefore, none of the *Rudersdal* factors support severance. Accordingly, the Moving Defendants' motion is **DENIED**.

The case remains stayed with the exception of the status letters concerning the Related Criminal Matter. (*See* ECF 103). However, ECF 103 is modified to the extent that Plaintiff is directed to submit their next status letter on **August 31, 2026**, and on the last business day of each quarter thereafter. Plaintiff is further directed to file these status letters as joint letters so that Defendants may make any comments they wish, rather than doing so in a separate filing. (*See, e.g.*, ECF 127).

The Clerk of Court is respectfully directed to close ECF 123.

**SO ORDERED.**

*/s/ Ona T. Wang*
**Ona T. Wang**
United States Magistrate Judge

Dated: August 24, 2026
New York, New York